**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LAUREN SPILLER-HOLTZMAN** | * | |
| *Plaintiff,* | * | |
| | | **Case No. 1:22-cv-00514** |
| **v.** | * | |
| **UNIVERSITY OF MARYLAND,** | * | |
| **BALTIMORE, ET AL.** | | |
| | * | |
| *Defendants.* | | |
| | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendant University of Maryland, Baltimore/University of Maryland School of Medicine (the "University") and the State of Maryland's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim. (ECF No. 15; "the Motion.") The court has reviewed all papers.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## <u>BACKGROUND</u>[1]

This action arises out of Plaintiff Lauren Spiller-Holtzman's employment with the University.  Plaintiff describes herself as "White" woman over the age of forty.  She began her employment with the University in 1988.  (ECF No. 4, ¶¶ 10 and 12.)  In November 2016, Plaintiff was hired by Dr. Rao Gullapalli to work in the University's Department of Diagnostic Radiology *Id.* ¶¶ 11 and 13.  Plaintiff identifies Dr. Gullapalli as an "Indian/Asian" man. *Id.* ¶ 14.  Plaintiff

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint.  (ECF No. 4.)

alleges that throughout her employment with the department, Dr. Gullapalli and other employees discriminated against her, harassed her, subjected her to a hostile work environment based on her sex, and retaliated against her for engaging in protected activity.  (ECF No. 4) Specifically, Plaintiff alleges instances where Dr. Gullapalli bragged to her and three other women about the "impressive size of his prostate" and "would stare and pant" at her.  *Id.* ¶¶ 16, 17.  Plaintiff alleges Dr. Gullapalli favored employees he viewed as "friendly" or "socializing" with him, and that he gave preferential treatment to female employees of the "Asian or Indian race" who were "compliant" with his directives.  *Id.* ¶¶ 25, 28.  Additionally, Plaintiff alleges that Dr. Gullapalli attempted to obtain a salary increase for a similarly situated, less experienced, younger female employee because, upon information and belief, she was "Arab and/or Middle Eastern."  *Id.* ¶¶ 19-24.

In 2017, Plaintiff filed an internal complaint through the University's EthicsPoint hotline which enables employees to make complaints of workplace discrimination and harassment.  (ECF No. 4, ¶¶ 28-30.)  Plaintiff complained that Dr. Gullapalli was "peddling his influence to female employees for favors or socializing with him and harassing employees."  *Id.* ¶¶ 34.  Plaintiff's EthicsPoint complaint was forwarded to the University's Title IX office and was dismissed in January 2018.  *Id.* ¶¶ 43-45.   On May 16, 2018, Plaintiff complained to a University Human Resources employee that Dr. Gullapalli "was interested in creating something like a 'Stepford Wives' vibe in the research department, wherein the good female employees that are sweet and smile at Dr. Gullapalli are promised raises, promotions, and other benefits."  *Id.* ¶ 54.  On May 29, 2018, Plaintiff received a performance review from Dr. Gullapalli, and was told she was "unprofessional," "inflexible," and that she needed to work on her "customer service skills."  *Id.* ¶¶ 55-57.

On or about August 22, 2018, Plaintiff filed EEOC Charge No. 531-2018-03554 (the "First EEOC Charge").  (ECF No. 15-2.)  In the First EEOC Charge, Plaintiff alleged that she was discriminated against and harassed on the basis of her sex and gender, and subjected to unlawful retaliation for protected activity.  *Id.*  Between November 2018 and March 2019, the University began sending Plaintiff "close-out letters" with respect to the internal complaints she filed for harassment and gender discrimination.  (ECF No. 4, ¶ 69.)  In May 2019, Plaintiff received another negative performance evaluation conducted by the department Research Administrator.  *Id.* ¶ 70.

On December 18, 2019, the University informed Plaintiff that her employment would be terminated effective March 18, 2020.  *Id.* ¶ 83.  Plaintiff alleges that, although the University claimed that her termination was the result of budget issues, the University announced in February 2020 that it was hiring for two new research positions in the department.  *Id.* ¶ 84.

On or about June 13, 2020, Plaintiff filed EEOC Charge No. 531-2020-02447 (the "Second EEOC Charge").  (ECF No. 15-5.)[2]  In the Second EEOC Charge, Plaintiff alleged that the University terminated her "due to retaliation (prior protected activity), Race (White), Sex (Female), Age (over 40)[;] and engaged in retaliatory and discriminatory hostile work environment . . . ."  (ECF No. 15-5.)  Plaintiff's First EEOC Charge was transferred to the Maryland

---

[2] Plaintiff did not attach her First or Second EEOC Charge to the Complaint; Defendants attached both documents to their Motion.  (*See* ECF Nos. 15-2 and 15-5.)  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint.  A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."  *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'"  *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  The court may consider the EEOC Charges attached to Defendants' Motion because the documents' very existence are necessary for Plaintiff to file the instant action and Plaintiff does not dispute their authenticity.  Further, the information in the EEOC Charges is necessary in determining the scope of the claims Plaintiff is entitled to bring before this court under Title VII.  The documents are integral and will be considered in resolving Defendants' Motion.

Commission on Civil Rights ("MCCR"), which scheduled an investigative session to be held in July 2019.  (ECF No. 4, ¶ 71-72.)  On July 28, 2020, the MCCR issued a Written Finding on the First EEOC Charge.  (ECF No. 15-3.)  On November 19, 2021, the EEOC issued a right-to-sue letter to Plaintiff which indicated that the EEOC had adopted the findings of the MCCR.  (ECF No. 3-4 at 26.) [3]  On November 24, 2021, Plaintiff was issued a right-to-sue letter regarding the Second EEOC Charge.

On December 17, 2021, Plaintiff filed her Complaint in the Circuit Court for Baltimore City. The Complaint sets forth seven counts: (Count I) Disparate Treatment Gender Discrimination in Violation of Maryland Code State Government § 20-601 and Title VII 42 U.S.C. § 2000(e); (Count II) Disparate Treatment Gender Discrimination (Hostile Work Environment) in Violation of Maryland Code State Government § 20-601 and Title VII 42 U.S.C. § 2000(e) [(Maryland Fair Employment Practices Act – "MFEPA")]; (Count III) Retaliation in Violation of Maryland Code State Government § 20-601 and Title VII 42 U.S.C. § 2000(e); (Count IV) Retaliatory Hostile Work Environment in Violation of Maryland Code State Government § 20-601 and Title VII 42 U.S.C. § 2000(e); (Count V) Discrimination in Violation of Maryland Code State Government § 20-601 [(MFEPA)]; and the Age Discrimination in Employment Act, 29 U.S.C. § 621

---

[3] Defendants attached to their Motion a right-to-sue letter they asserted at the time was issued to Plaintiff on September 28, 2020, regarding the First EEOC Charge.  (ECF No. 15-4.)  Based on the September 28 right-to-sue letter, Defendants argued that Plaintiff was required to bring the Title VII claims included in her First EEOC Charge by December 28, 2020, which would render those Title VII claims time-barred; and that the court could consider the September 28 right-to-sue letter without converting the Motion to one for summary judgment.  (ECF No. 15-1 at 3, n.2.)  Plaintiff countered that she never received a right-to-sue letter dated September 28, 2020.  Instead, Plaintiff attached to her Complaint a right-to-sue letter dated November 19, 2021, regarding the First EEOC Charge, which would render timely her Complaint, which was filed December 17, 2021.  The court authorized the parties to conduct limited preliminary discovery to resolve the factual dispute arising from the two differently dated right-to-sue notices. (ECF No. 30.)  The parties engaged in limited discovery; as a result, "Defendants now concede that [the affidavits of Plaintiff's former counsel], coupled with the fact that the EEOC issued a second right to sue notice on the same charge on November 19, 2021, are sufficient to overcome the presumption that the September 28, 2020, right to sue notice was delivered to the Plaintiff."  (ECF No. 33 at 3.)  Accordingly, the court will not address Defendants' argument that Plaintiff failed to file her Title VII claims within 90 days of the operative notice of right-to-sue regarding the First EEOC Charge, as the argument has been resolved by Defendants' good faith concession.

[("ADEA")]; (Count VI) Discrimination (Race) in Violation of Maryland Code State Government § 20-601 and Title VII of the Civil Rights Act of 1964; and (Count VII) Harassment in Violation of State Government Title 20-605(5) [(MFEPA)].  (ECF No. 4 at 12-22.)  Defendants removed the case to this court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  (ECF No. 3, ¶¶ 3-4.)

On March 4, 2022, Defendants filed the Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the basis that: (1) Plaintiff's ADEA claim is barred by sovereign immunity; (2) Plaintiff failed to timely file her claims with the EEOC as required by 42 U.S.C. § 2000e-5(e)(1); and (3) Plaintiff's MFEPA Claims are time-barred and fail to state claims upon which relief can be granted.  (ECF No. 33 at 3.)

## LEGAL STANDARDS

### I.   FEDERAL RULE OF CIVIL PROCEDURE – 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction."  *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).  Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge.  *Id.*  A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction."  *Id.*  A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true."  *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject

matter jurisdiction.'"  *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")).  "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'"  *Id.*

Defendants' 12(b)(1) arguments attack Plaintiffs' pleadings and do not present a factual challenge to subject matter jurisdiction.  Accordingly, Defendants' 12(b)(1)-based challenge will be evaluated in accordance with the procedural protections afforded under Rule 12(b)(6), which is to say that the facts alleged in the Complaint will be taken as true per *Trump* and *Kerns*.

## II.    FEDERAL RULE OF CIVIL PROCEDURE – 12(b)(6)

A motion asserted under Rule 12(b)(6) "tests the legal sufficiency of a complaint."  It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Id.* (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

## ANALYSIS

## I.    SUBJECT MATTER JURISDICTION – RULE 12(b)(1)

Defendants assert the court lacks subject matter jurisdiction over Plaintiff's ADEA claim (Count V) because the claim is barred by state sovereign immunity. (ECF no. 15-1 at 8.) Plaintiff counters that Defendants waived sovereign immunity under the Maryland Torts Claim Act ("MTCA") because "the Maryland Court of Appeals has previously found the MTCA's definition of 'tort' to encompass civil claims." (ECF No. 22-7 at 16) (citing *Green v. N.B.S., Inc.,* 409 Md. 528 (2009)).

In the Fourth Circuit, the defense of sovereign immunity is a jurisdictional bar, because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. General Dynamics Info. Tech*., 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). Because sovereign immunity is akin to an affirmative defense, a defendant bears the burden of demonstrating that sovereign immunity exists. *Hutto v. S.C. Ret. Sys*., 773 F.3d 536, 543 (4th Cir. 2014).

Following their filing of the Motion, Defendants provided the court with supplemental authority that resolves the parties' contentions on this point. (ECF No. 37-1, attaching *Williams v. Morgan State Univ.,* Misc. No. 9, Sept. Term, 2022, Supreme Court of Maryland, issued Aug. 14, 2023.) In *Williams*, the Supreme Court of Maryland, on a certified question from the United States Court of Appeals for the Fourth Circuit, addressed whether the MTCA's waiver of sovereign immunity as to tort actions extends to federal statutory claims. The Maryland Supreme Court held:

> The certified question posed by the Fourth Circuit, and slightly rephrased by us, is whether "a tort action" under the MTCA includes federal statutory claims. Our answer is no. We hold as such because, after assessing the plain language of the MTCA, there is no evidence that the General Assembly intended to include federal statutory claims within the scope of the MTCA. Furthermore, adopting

7

> Appellant's approach would produce results that are inconsistent
> with one of the MTCA's main purposes.

*Williams, supra,* at 23-24.   Accordingly, Plaintiff's ADEA claim is barred by state sovereign

immunity and Defendant's Motion as to Plaintiff's ADEA claim set forth in Count V will be

granted.

## II.   FAILURE TO STATE A CLAIM – RULE 12(b)(6)

### A.   Title VII Claims

Defendants argue that Plaintiff's Title VII claims set forth in Counts I, II, III, IV, and VI

are time-barred.   (ECF Nos. 15-1 at 2; 33 at 3.)   "Generally, the statute of limitations is an

affirmative defense that is not an appropriate ground for dismissal."   *Anne Arundel Cnty. V. Xerox*

*State & Local Solutions, Inc.,* 2016 U.S. Dist. LEXIS 136385 at *7 (D. Md. Sept. 30, 2016) (citing

*Eniola v. Leasecomm* Corp., 214 F.Supp.2d 520, 525 (D. Md. 2002)).   "The court may, however,

grant a motion to dismiss based on a statute of limitations defense when the untimeliness of the

claim is obvious on the face of the complaint."   *Id.* (citing *Evans v. Beneficial Fin. I, Inc.*, 2015

U.S. Dist. LEXIS 15032, at *2 (D. Md. Feb. 9, 2015) (citations omitted)).   "The burden of

demonstrating a viable statute of limitations defense is on the asserting party, and the plaintiff 'is

under no obligation to plead facts in a complaint to show the timeliness of her claims.'" *Id.* (quoting

2015 U.S. DIST LEXIS 15032 at * 2.)

Pursuant to 42 U.S.C. § 2000e-5(e)(1):

> A charge under this section shall be filed within one hundred and
> eighty days after the alleged unlawful employment practice occurred
> and notice of the charge (including the date, place and circumstances
> of the alleged unlawful employment practice) shall be served upon
> the person against whom such charge is made within ten days
> thereafter, except that in a case of an unlawful employment practice
> with respect to which the person aggrieved has initially instituted
> proceedings with a State or local agency with authority to grant or
> seek relief from such practice or to institute criminal proceedings

> with respect thereto upon receiving notice thereof, such charge shall
> be filed by or on behalf of the person aggrieved within three hundred
> days after the alleged unlawful employment practice occurred, or
> within thirty days after receiving notice that the State or local agency
> has terminated the proceedings under the State or local law,
> whichever is earlier, and a copy of such charge shall be filed by the
> Commission with the State or local agency.

"Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *AMTRAK v. Morgan,* 536 U.S. 101, 109 (2002) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). Section 2000e-5(e)(1) provides two time periods for an aggrieved individual to serve notice upon the person or entity against whom the charge is made. *Id.* A charge must be filed within 180 days after the alleged unlawful employment practice occurred unless the aggrieved person initiated proceedings with a State or local agency, in which case the aggrieved person has 300 days after the alleged employment practice occurred to file a charge. 42 U.S.C. § 2000e-5(e)(1); *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 439 (4th Cir. 1998). Therefore, a person must file a charge within 180 or 300 days of the alleged unlawful practice depending on whether a proceeding was initiated at the state or local level, and "a claim is time barred if it is not filed within these time limits." *Id.; AMTRAK,* 536 U.S. at 109. The Supreme Court has held that discrete discriminatory acts that occur outside of the 180- or 300-day limitation period may not be considered by the court. *Id.* at 113.

"The words 'initially instituted' simply mean that the state agency must be given the first opportunity to act on the complaint . . . and not that the fortuity of filing first with the EEOC will deprive the unwitting complainant of the extended statute of limitation." *Lo Re v. Chase Manhattan Corp.,* 431 F. Supp. 189, 196 (S.D.N.Y. 1977) (citing *Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1330 (4th Cir. 1976)) (holding that it is well settled that the meaning of the phrase

"initially instituted" is that "the state or local agency should be given first opportunity to act on the Complaint.")  Here, the First EEOC Charge and the Second EEOC Charge (together the "EEOC Charges") are both subject to the 300-day limitation period because the MCCR was the first agency to act on Plaintiff's EEOC Charges.

Defendants argue that Plaintiff's Title VII claims are time-barred because the "allegations of misconduct by the University pre-date the filing of the Second EEOC Charge by more than 300 days." (ECF No. 15-1 at 7.)  Plaintiff counters that any "hostile work environment claims" are covered under the continuing doctrine violation theory. (ECF No. 36 at 2.)  Defendants' argument fails to consider that Plaintiff brought this action based on two separate EEOC charges.

In the First EEOC Charge, Plaintiff alleged that the first instance of discrimination occurred in February 2017 and was ongoing at the time she filed the charge. (ECF No. 15-2.)  Because Plaintiff filed the First EEOC Charge on or about August 23, 2018, any allegation of misconduct before October 27, 2017 (300 days before the First EEOC Charge) is untimely.  Plaintiff's First Charge of Discrimination sets forth three instances of discrimination that fall outside the 300-day period: (1) February 2017 — Plaintiff attended a meeting with three other female employees at which Dr. Gullapalli made remarks about the "impressive size of his prostate"; (2) May 2017 — Dr. Gullapalli told Plaintiff she was being transferred to another research group that travels a lot; and he did not transfer similarly situated female employees who socialized with him outside of the workplace; and (3) Summer 2017 — Dr. Gullapalli told Plaintiff that he would promote another female employee over her and she believed it was because the other female employee socialized with him outside of work. (ECF No. 15-2.)  All other instances of alleged discrimination or misconduct by the University fall within the 300-day period and are, therefore, timely.

With respect to Plaintiff's argument that (otherwise) untimely instances of discrimination may nonetheless be considered by the court under the continuing violation doctrine, the court agrees.   The Supreme Court explained in *AMTRAK v. Morgan*:

> In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [*Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)]. To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

536 U.S. 101, 116-117 (2002).   The First EEOC Charge includes allegations related to Plaintiff's hostile work environment claim that fall within the 300-day limitation period.   Accordingly, the court may consider instances supporting Plaintiff's hostile work environment claim that fall outside the 300-day period.

With respect to the Second EEOC Charge, Plaintiff indicated that the earliest instance of discrimination occurred on December 18, 2019, and the last instance of discrimination occurred on March 18, 2020 — the effective date of Plaintiff's termination with the University.   (ECF No. 15-5.)   Therefore, under the 300-day limitation period, instances of discrimination or misconduct alleged to have occurred prior to August 18, 2019, are time barred.   The earliest alleged act of

11

discrimination or misconduct at issue in Plaintiff's Second EEOC Charge is alleged to have occurred on December 18, 2019 — which is within the 300-day limitation period. Therefore, the allegations set forth in the Second EEOC Charge are not barred as untimely.

**B.**     MFEPA Claims

Defendants argue that Plaintiff's MFEPA claims are time-barred.

"Under MFEPA, [Plaintiff] is required to exhaust the administrative process." *Bales v. Md. Judiciary/Administrative Office of the Courts,* 2016 U.S. Dist. LEXIS 161581 *25 (D. Md. Nov. 21, 2016) (citing MD. CODE ANN., STATE GOV'T § 20-1013(a)). "A plaintiff exhausts his administrative remedies by filing an EEOC charge and obtaining a 'right-to-sue' letter." *Id.* at *26 (citations omitted). "Specifically, under MFEPA, 'a complainant may bring a civil action against the respondent alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent; (2) at least 180 days have elapsed since the filing of the administrative charge or complaint; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred.'" *Id.* (quoting MD. CODE ANN., STATE GOV'T § 20-1013(a)(1-3)). "For the first requirement under § 20-1013(a), '[t]imeliness [is] to be strictly enforced.'" *Id.* (quoting *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587, 597 (D. Md. 2000)).

Plaintiff argues that her MFEPA hostile work environment and harassment claims brought under Counts II, IV, and VII are subject to a three-year, rather than a two-year, limitations period. Defendants do not contest that Plaintiff's harassment claim is subject to the three-year limitations period, but argue that, to the extent Count VII's harassment claim is based on actions that occurred prior to December 17, 2018, it is time-barred. (EC No. 29 at 6.)

Defendants argue that Counts I through VI allege gender, race, and age discrimination, and retaliation in violation of the MFEPA, and are subject to a two-year limitations period. (ECF No. 29 at 6.) Defendants argue further that the only alleged wrongful act that occurred within the limitations period is Plaintiff's December 18, 2019, termination; therefore, Defendants urge, Plaintiff's claims are time-barred because no discriminatory act or protected activity is alleged to have occurred within the limitations period.

On October 1, 2019, the Maryland General Assembly amended the MFEPA to increase the time within which a complainant must bring certain civil actions from two to three years of the complained-of act. 19 Maryland Laws Ch. 222 (H.B. 679). The statute, as amended, provides:

> (1) In addition to the right to make an election under § 20-1007 of this subtitle, a complainant may bring a civil action against the respondent alleging an unlawful employment practice, if:
>
>> (i) the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent;
>>
>> (ii) at least 180 days have elapsed since the filing of the administrative charge or complaint; and
>>
>> (iii)
>>
>>> 1. subject to item 2 of this item, the civil action is filed within 2 years after the alleged unlawful employment practice occurred; or
>>>
>>> 2. if the complaint is alleging harassment, the civil action is filed within 3 years after the alleged harassment occurred.

MD. CODE ANN., STATE GOV'T § 20-1013(a)(1).

Based on the plain language of the statute, the three-year limitations period applies to Plaintiff's alleged hostile work environment and harassment claims because the hostile work environment arises from pervasive harassment. "A hostile environment exists '[w]hen the

workplace is permeated with discriminatory intimidation, ridicule, and insult . . . .'" *Boyer-Liberto v. Fontainebleau, Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted)).   To demonstrate that a hostile environment exists with respect to race-based or sexual harassment, a plaintiff "must show that there is (1) unwelcome conduct; (2) that is based on the [plaintiff's] . . . race [or sex]; (3) which is sufficiently severe or pervasive to alter the [plaintiff's] conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011).   Therefore, in order to fall within the applicable limitations period, Plaintiff must allege conduct in support of her harassment and hostile work environment claims that post-dates December 17, 2018 — three years before Plaintiff filed the Complaint.

The Complaint alleges:

> Between November 2018 and March 2019, the University began sending Plaintiff close-out letters with respect to her complaints of harassment and gender discrimination by Dr. Gullapalli.
>
> In May 2019, Aslihan Nuri gave Plaintiff another PDP evaluation. Plaintiff left the meeting crying.   Once witnesses left the room, Ms. Nuri "tore into" Plaintiff.   Ms. Nuri berated Plaintiff and made false accusations concerning her performance.
>
> In early July, 2019, Dr. Gullapalli formulated a plan to remove Plaintiff from her position.
>
> Dr. Gullapalli alleged that there was a need to "minimize costs" in the Department.
>
> Dr. Gullapalli believed that this would be an opportunity to remove Plaintiff from her position.

(ECF No. 4, ¶¶ 69-70, and 74-76.)

Although many of Plaintiff's allegations surrounding Dr. Gullapalli's alleged harassment occurred prior to December 17, 2018, Plaintiff has alleged at least two instances of discrimination

or harassment that occurred within the limitations period — 1) the May 2019 negative performance evaluation; and 2) Dr. Gullapalli's alleged July 2019 plan to remove Plaintiff from her position. Maryland recognizes the "continuing harm doctrine," which operates to toll the statute of limitations in cases based on continuing or on-going unlawful employment practices or conduct. *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 646 (2013). "The purpose of the continuing harm doctrine is to avoid punishing a plaintiff 'because one or more [violations] occurred earlier in time' . . . when such violations 'are continuing in nature.'" *Id.* at 647 n.9 (quoting *MacBride v. Pishvaian,* 402 Md. 572, 584 (2007)). Plaintiff's allegations, together with the continuing harm doctrine, do not make it apparent on the face of the Complaint that these claims are time barred. Plaintiff's hostile work environment and harassment claims, therefore, survive dismissal.

With respect to Plaintiff's claims for gender, age, and race discrimination and retaliation (Counts I, III, V, VI), the applicable statute of limitations period is two years. MD. CODE ANN., STATE GOV'T § 20-1013(a)(1)(iii)(1). The Complaint alleges:

> Defendant notified Plaintiff on December 18, 2019 that she would be terminated effective March 18, 2020.

> Although Defendant claimed that the reason for Plaintiffs termination was budget issues, in February 2020 Defendant announced it was hiring for two new research positions in the Department of Diagnostic Radiology.

(ECF No. 4, ¶¶ 83-84.) Here, it is apparent from the face of the Complaint that these claims are time-barred. Plaintiff's allegations that relate to any form of discrimination or protected activity relate to conduct that pre-dates December 17, 2019. The only alleged conduct that occurred within the limitations period is Plaintiff's termination, which, alone, is insufficient to state a claim of discrimination or retaliation. Plaintiff's MFEPA claims set forth in Counts I, III, V, and VI will, therefore, be dismissed.

15

**C.**     **State of Maryland – Improper Defendant**

Defendants assert, and Plaintiff does not challenge, that the State of Maryland should not be named as a defendant in this action; instead the proper party is the University of Maryland. (ECF Nos. 15-1 at 9; 22-7 at 15.)  Accordingly, the Complaint will be dismissed as against the State of Maryland.

## CONCLUSION

For the reasons set forth herein, by accompanying order, the Motion will be granted in part and denied in part as follows: granted with respect to the MFEPA claims set forth in Counts I, III, V, and VI, and the ADEA claim set forth in Count V; denied with respect to all Title VII claims, and the MFEPA claims set forth in Counts II, IV, and VII.

_____/S/_____
Julie R. Rubin
United States District Judge

September 27, 2023

16